### AUTOMOBILE UNDERWRITERS OF AMERICA v. RADFORD et al.
### (No. 9700.)

Court of Civil Appeals of Texas. Dallas.
Feb. 24, 1927.

Rehearing Denied April 23, 1927.

**1. Trial 362—Where jury found value of insured automobile before and after fire, court could add legal interest from date of maturity of policy to date of judgment.**

In suit on automobile fire policy, where jury were directed to find value of automobile immediately before and after fire and what amount of money would be reasonably required to repair automobile and replace such parts thereof as had been damaged, court could add legal interest from date of maturity of policy to date of judgment.

**2. Appeal and error 1070(2)—Irreconcilable conflict in jury's findings, in suit on automobile fire policy, required reversal of judgment.**

Where, in suit on automobile fire policy, jury found in answer to special issues that damaged parts of automobile could not be replaced so as to place it in substantially as good condition as it was before fire, and that $1,800 would be required to replace parts so as to put it in substantially as good condition as it was before fire, and that value of automobile before fire was $2,765, and court rendered judgment for $2,400, amount of policy, irreconcilable conflict in findings required reversal of judgment.

**3. Insurance 146(3)—Language of insurance policy, where uncertain, should be viewed in light most favorable to insured.**

Where there is doubt or uncertainty surrounding language of insurance policy, it should be viewed in light most favorable to insured.

**4. Insurance 502—Clause of automobile fire policy held to fix as measure of liability what it would cost to "repair" or "replace" automobile so as to place it in substantially as good condition as before fire.**

Clause in automobile fire insurance policy providing that liability shall not exceed what it would cost to repair or replace automobile, or such parts thereof as may be damaged with other of like kind and quality, held to fix as measure of liability what it would cost to repair or replace damaged parts, so as to restore automobile to substantially as good condition as it was in before fire; "repair" meaning to restore to sound, good, or complete state after injury or partial destruction, and "replace" meaning to restore, return, make good.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Repair—Repairs.]

**5. Appeal and error 971(2)—Determining qualification of witnesses to testify regarding value is within trial court's province.**

Determination of qualifications of witnesses to testify as to value lies peculiarly within trial court's province.

**6. Evidence 113(2)—Permitting evidence of value of insured automobile at time witnesses saw it, some time after fire, held error.**

In suit on automobile fire insurance policy, testimony of witnesses, based on condition of automobile at time they examined it, some time after fire, and as to its then value, and not on condition immediately after fire, held error, although other testimony showed that car was in same condition at time of trial that it was immediately after fire.

**7. Trial 120(1)—Counsel's argument must be based on evidence within record.**

Although great latitude is allowed in discussion of facts in order to show environments of case, what effect should be given evidence by comparison to show its reasonableness or unreasonableness, probative effect or want thereof, bias or interest of parties, etc., counsel's argument must be based on evidence within the record.

#### On Motion for Rehearing.

**8. New trial 117(1), 155—Statute held mandatory as to time within which motion for new trial shall be presented for action thereon and as to time when such motion shall be determined (Rev. St. 1925, art. 2092, subd. 28, 30).**

Rev. St. 1925, art. 2092, subd. 28, 30, held mandatory as to time within which motion for new trial, whether original or amended, shall be presented to court for action thereon, and as to time when motion shall be determined.

**9. New trial 117(1)—Statute held directory as to time in which original motion for new trial must be filed (Rev. St. 1925, art. 2092, subd. 29).**

Provisions of Rev. St. 1925, art. 2092, subd. 29, as to time in which original motion for new trial is required to be filed and may be amended, held to be directory and not mandatory.

**10. New trial 116(2)—Date of judgment as regards time for filing motion for new trial is date on which pronouncement is made by court (Rev. St. 1925, art. 2092, subds. 28–30).**

Date of judgment as regards time for filing motion for new trial, under Rev. St. 1925, art. 2092, subds. 28–30, is date on which pronouncement was made by court which determined rights of parties, regardless of date of any proceedings had prior thereto, and clerical act of entering judgment has nothing to do with fixing date.

**11. Appeal and error 933(1)—Unless it affirmatively appears in record to contrary, appellate court must assume that proceedings for new trial were in conformity with statute (Rev. St. 1925, art. 2092, subds. 28–30).**

Unless it affirmatively appears that recitals in judgment on motion for new trial, showing that same was duly filed by leave of court and was heard and acted upon, are incorrect, appellate court must assume that proceedings were in conformity with requirements of Rev. St. 1925, art. 2092, subd. 29, as to filing of original and amended motion, and that said original motion was heard and determined within time required by subds. 28, 30.

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Action by Mrs. J. F. Radford and husband against the Automobile Underwriters of America. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellant.

Whitehurst & Whitehurst, of Dallas, for appellees.

VAUGHAN, J. Appellees Mrs. J. F. Radford and husband, J. F. Radford, sued appellant, Automobile Underwriters of America, alleging that on April 7, 1923, she was the owner of an R. & V. Knight automobile, that on that date, in consideration of premium duly paid, appellant issued to her its policy numbered 132734, insuring her against direct loss or damage to the body, machinery, and equipment of said automobile caused by fire arising from any cause whatsoever, from April 7, 1923, to April 7, 1924, in the amount of $2,400. Appellees further alleged that on July 29, 1923, said automobile was completely and totally destroyed by fire, that, having complied with the terms of the policy in reference to notice of loss, she had demanded of the appellant that it pay her the full amount of said policy, which demand was refused. Appellee sued for the full amount of the policy, together with interest thereon from July 29, 1923, to the date of trial, at the rate of 6 per cent. per annum. Appellant answered, admitting all the allegations of appellees except the allegation that the automobile was a complete and total loss. To this claim appellant specially pleaded a term of the policy providing in no event should appellant be liable for more than what it would then cost to repair or replace the automobile or such parts thereof as may be damaged with other of like kind and quality, and alleged that only certain specific parts of appellees' car, viz., the painting, glass work, top, and upholstering, had been damaged by fire, which parts could be repaired or restored at a cost of not more than $350.

The cause was submitted to the jury on four special issues, said issues and the answers thereto being as follows:

"(1) Could the damaged parts of the automobile in suit be replaced with others of like kind and quality, so as to place it in substantially as good condition as it was before the fire? Answer Yes or No. Answer: No.

"(2) What amount of money would reasonably be required to repair the car in question and replace such parts thereof, if any, as have been damaged, with others of like kind and quality so as to place it in substantially as good condition as it was before the fire? Answer: $1,800.

"(3) What was the actual cash value of the car in question immediately before said fire? Answer: $2,765.

"(4) What was the actual cash value of the car in question immediately after said fire? Answer: None."

On appellees' motion, the court rendered judgment in their favor on the verdict of the jury for $2,400, plus $173 interest, or a total of $2,573. Appellant's defense was entirely (and the major questions presented by this appeal are) based upon the following provision of the policy:

"This exchange shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated accordingly, with proper deduction for depreciation, however caused (and without compensation for the loss of use of the property), and shall in no event exceed what it would then cost to repair or replace the automobile or such parts thereof as may be damaged with other of like kind and quality. * * * "

By its first proposition, appellant contends that the court erred in rendering judgment for interest in the sum of $173, covering the period of time from 60 days after notice and proof of loss to the date of the judgment, at the rate of 6 per cent. per annum. The premises for this contention are that where no interest is prayed for, as damages and the jury is not asked to make a finding as to interest, the court may not decree interest on the amount of damages found by the special verdict. The automobile covered by the policy declared upon was alleged to have been destroyed and damaged by fire to such an extent that same thereafter had no pecuniary or market value; that they gave all notices to appellant required by law and the terms and conditions of said policy of said fire, and the damages sustained by appellees, and in every other way complied with each and every term, condition, and stipulation contained in said policy; that appellees had been damaged and had demanded the payment of said sum specified in said policy, to wit, the sum of $2,400; that appellees had wholly failed and refused to make such payment; and further alleged that, under and by virtue of the premises, appellant had become justly indebted and promised to pay appellees the sum of $2,400, together with interest thereon at the rate of 6 per cent. from July 29, 1923.

[1] The court did not submit to the jury to find the amount of damages appellees suffered, but to find the value of the property destroyed before the fire and its value, if any, immediately thereafter, as shown by special issues Nos. 3 and 4. It is true, the court submitted another and different means of ascertaining the measure of recovery by special issues Nos. 1 and 2, viz., what it would reasonably cost to repair the car and replace such parts thereof as had been damaged. In answering the special issues upon which the case was submitted, the jury was

not called upon to ascertain the amount of damages suffered by appellees, but only to ascertain by their answers to such issues the value of the property before and after the fire, and what it would have then cost to repair the automobile and replace such parts thereof, if any, as had been damaged. In no respect was the jury called upon to ascertain the amount of damages that appellees had sustained on account of the alleged destruction of the automobile, but were only directed to ascertain the value of the automobile immediately before and after the fire and what amount of money would reasonably be required to repair the automobile and replace such parts thereof as had been damaged. Therefore the court had the right to add legal interest from the date of the maturity of the policy to the date of the judgment. C., R. I. & G. Ry. Co. v. Trinity Valley Prod. Co. (Tex. Civ. App.) 269 S. W. 1110.

[2] By its second proposition, appellant contends that the findings of the jury on issues 1 and 2 are absolutely contradictory, and each finding, being supported by evidence, cannot support the judgment. In answer to special issue No. 1, the jury found that the damaged parts of the automobile could not be replaced with others of like kind and quality so as to place it in substantially as good condition as it was in before the fire. This was, in effect, but a finding that the automobile had been so damaged as to become totally destroyed and worthless as an automobile, and that same could not be repaired so as to be restored in substantially as good condition as it was in before the fire. The answer to special issue No. 2 is also a positive finding that $1,800 is the amount of money that would reasonably be required to repair the automobile in question and replace such parts thereof as had been damaged with others of like kind and quality, so as to place the automobile in substantially as good condition as it was in before the fire. These findings are supported by evidence which we will not discuss, in view of another trial of this cause. Here is a vital conflict that cannot be reconciled, viz., that the damaged parts of the automobile could not be replaced with others of like kind and quality so as to place it in substantially as good condition as it was in before the fire, with a contrary holding, equally as important to a proper legal disposition of this case, viz., that $1,800 would be the amount of money reasonably required to so repair said car and replace the damaged parts thereof. This conflict does not end here, but finds its way into the answers to special issues 3 and 4. To No. 3 the jury determined that the actual cash market value of the automobile immediately before the fire was $2,765, and in answer to No. 4 determined that it did not have any cash market value immediately after the fire. This answer to special issue No. 4 is in direct conflict with the jury's answer to special issue No. 2. To state the situation should be sufficient. The answer to No. 2 is, in effect, a finding that the car was worth after the fire the difference between its actual cash market value ($2,765) immediately before the fire and what it would have then cost ($1,800) to repair the car and replace such parts as had been damaged, a difference of $965. This conflict is also irreconcilable. Now, what of the effect of this conflict on the judgment appealed from? The total liability under the policy was $2,400. By answer to special issue 3 the jury found the automobile immediately before the fire to be worth $2,765. By answer to special issue 4 it found that the automobile did not have any cash market value immediately after the fire. This finding would render the appellant liable for the full sum of $2,400, but by its answer to special issue No. 2 the jury found that it would require only $1,800 to repair the car and replace such parts thereof as had been damaged. This being true, the liability of appellant could not exceed the sum of $1,800, making a difference of $600 between the amount of the judgment and appellant's liability, as thus found by the jury. If the automobile had no actual cash value after the fire, the judgment rendered would be correct. On the other hand, if the answer to special issue No. 2 is correct, then the judgment is excessive by $600. The vital and irreconcilable conflict in the findings of the jury cannot but result in a reversal of the judgment of the trial court. Stoker v. Fugitt (Tex. Civ. App.) 102 S. W. 743; Brewster v. City of Forney (Tex. Com. App.) 223 S. W. 175.

Appellant requested the following special issues to be submitted:

"(1) Could the damaged parts of the automobile in suit be replaced with others of like kind and quality?

"(2) If you have answered the foregoing question affirmatively, find the amount that such replacement of parts and repairs would cost,"

—which the court refused to submit, and instead thereof submitted special issues 1 and 2, supra, the vital difference between special issue No. 1 requested and No. 2 submitted by the court being the words, "so as to place it in substantially as good condition as it was before the fire," included in said special issue No. 2. Appellant contends that it had the right, having particularly pleaded the specific provision of the policy fixing the standard or test by which its liability should be determined as a defense, to have the issue made by said pleading affirmatively submitted, which right was denied to it by the addition of the words, "so as to place it in substantially as good condition as it was

before the fire," submitted as a part of special issue No. 2. This involves the logical effect of the language of the following portion of paragraph E of said policy:

"* * * What it would then cost to repair or replace the automobile, or such parts thereof as may be damaged, with other of like kind and quality."

Properly analyzed and given its everyday, commonly accepted meaning, this language can only mean: (a) What it would cost to repair the automobile, or (b) what it would cost to replace the automobile, or (c) what it would cost to repair or replace such parts of the automobile" as may be damaged with other of like kind and quality." Now, what is the meaning commonly given to the word "repair?" We find the meaning to be:

"To restore to a sound, good, or complete state after decay, injury, dilapidation or partial destruction." The Century Dictionary and Cyclopedia, vol. VI.

From the same authority, we glean that the word "replace" is commonly understood and accepted to mean:

"To restore, return, make good, to substitute something competent in the place of, as of something which has been displaced or lost, or destroyed; to fill or take the place of, supersede, be a substitute for, fulfill the end or office of."

[3, 4] Viewed in the light most favorable to the insured, which the language of the policy should be where there is any doubt or uncertainty surrounding it, the court did not err in placing such interpretation upon the language of the policy on which appellant based its defense; for unless the automobile, when repaired or replaced, or its damaged parts repaired or replaced, would have been substantially restored to as good condition as it was in before the fire, it could not be said that same had been "repaired" or "replaced." Therefore, section E fixed as the measure of liability what it would cost to repair or replace the automobile, or such parts thereof as had been damaged with other of like kind and quality, so as to restore it as an automobile to substantially as good condition as it was in before the fire. Maryland Motor Car Ins. Co. v. Smith (Tex. Civ. App.) 254 S. W. 256; C. R. I. & G. Ry. Co. v. Zumwalt (Tex. Cr. App.) 239 S. W. 913; Tex. Moline Plow Co. v. Niagara Fire Ins. Co., 39 Tex. Civ. App. 168, 87 S. W. 192. Wherefore, we hold that special issues Nos. 1 and 2, as submitted, were within the meaning of the terms and conditions of the policy, and that appellant's defense was affirmatively, clearly, and fully submitted.

[5] Appellant challenges the rulings of the court in permitting certain witnesses to testify as to value on the ground that they had not duly qualified. We have carefully examined the testimony of the witnesses thus brought into question and find that the trial court did not abuse the discretion resting peculiarly within its province in determining the qualification of the witnesses to testify as to value. Hence this assignment is overruled. Humble Oil & Ref. Co. v. McLean (Tex. Civ. App.) 268 S. W. 179; Studebaker Harness Co. v. Gerlach Merc. Co. (Tex. Civ. App.) 192 S. W. 545.

[6] S. E. Hardy and A. C. Patzig, witnesses for appellees, who did not see the automobile immediately after the fire, were permitted over objection of appellant to testify as to its market value at the time they saw it. This testimony was objected to on the ground that neither of said witnesses saw the automobile until long after the fire. Therefore their testimony was based upon the condition of the automobile at the time they examined it and as to its then value, and not on its condition immediately after the fire and its then value. The admission of this evidence would not have been error if same had been limited to the value of the car immediately after the fire. This, because it was shown by testimony of appellee Mrs. J. F. Radford that the car was in the same condition at the time of the trial that it was immediately after the fire, that no change had taken place therein since the fire; her testimony in this respect being as follows:

"The car is now in the same condition that it was immediately following the fire. I had all the parts wiped off and greased and oiled. I had a man oil and grease it every so often and kept it in storage for about a year. I had the parts looked after; I had them greased and taken care of. All the parts of the car are now with the car at 2009 Bryan street, everything being just like it was."

This was sufficient to show that no material change had taken place in the car, and that it was substantially in the same condition at the time said witnesses examined it that it was in immediately after the fire. However, the testimony objected to was as to the value at the time the witnesses saw the automobile, and not its value immediately after the fire. For this the court erred in admitting the evidence. Taylor v. Gossett (Tex. Civ. App.) 269 S. W. 230.

[7] By its seventh proposition, appellant complains of the action of the court in overruling its objection to the argument of counsel representing appellees in the presentation of the case to the jury. In view of the fact that the case will be reversed on other grounds, we do not deem it necessary to discuss this proposition at length. However, in order to avoid the repetition of the argument complained of on another trial, we think it advisable to state that the argument was not justified by the record, or required in order to properly review, analyze, and give logical effect to the testimony before

the jury on which the rights of the parties were made to depend. It is true, great latitude is allowed in the discussion of the facts in order to show the environments of the case, what effect should be given evidence by comparison to show its reasonableness or unreasonableness, its probative effect or want thereof, bias or interest of the parties, etc., but this must all be within the record, the foundation of which must be the evidence before the court and jury, only by means of which the rights of the parties should be ascertained. The following, taken from the Century Dictionary and Cyclopedia, will amply illustrate the rule that should be observed in the presentation of a matter in dispute before a jury:

"Argument is the bare proof or mean term which is invented by him that disputeth to prove the truth of the question, but argumentation is the whole reasoning itself, of what form so ever it be, comprehending both the question and also the proof thereof. * * * A reasoning the process by which the connection between that which is or is supposed to be admitted and that which is doubted or supposed to need confirmation is traced or tested."

The other questions raised have been as carefully considered and determined as those herein discussed, but, not being deemed of sufficient importance to be reflected in this opinion, and not likely to recur on another trial, will be disposed of with the statement that same are overruled, no material error having been discovered therein. The judgment of the court below is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

### On Motion for Rehearing.

Appellees, among other grounds urged, contend that this court erred in reversing and remanding this cause because appellant did not file a motion for new trial in the trial court in compliance with subdivisions 29 and 30 of article 2092, R. C. S. 1925, applicable to civil district courts in counties having two or more district courts with civil jursdiction only, whose terms continue for three months or longer.

[8] In passing upon this question, subdivision 28 of said article 2092 should be considered in connection with subdivisions 29 and 30, supra. By the terms of said subdivision 28, all motions and amended motions for new trial are required to be presented within 30 days after date of filing of the original motion or amended motion, and to be determined within not exceeding 45 days after filing original or amended motion, unless postponed to a later date by written agreement of the parties filed in the case. Subdivision 30 makes final judgments of such civil district courts after the expiration of 30 days from the date of judgment or the

date of overruling motion for a new trial, and prohibits the setting aside of a judgment rendered by such courts after the expiration of 30 days from the date of the rendition of judgment or from the date motion for a new trial is overruled except by bill of review for sufficient cause. The provisions of said subdivisions were enacted for the purpose of accomplishing the conclusion of litigation in trial courts, therefore are mandatory as to the time within which a motion for new trial, whether original or amended, shall be presented to the court for action thereon, and as to the time when such motion shall be determined. Subdivision 29 provides that:

"A motion for new trial where required shall be filed within ten days after the judgment is rendered * * * and may be amended by leave of the court at any time before it is acted on within twenty days after it is filed."

[9] Article 2232, Id., relating to the filing of motions for new trials in district courts other than courts designated in article 2092, supra, is as emphatic in reference to the time within which the motion shall be filed as subdivision 29, supra. Said article 2232 provides that such motion shall be made within two days after the rendition of verdict, whereas the language of subdivision 29 provides that a motion for new trial, where required, shall be filed within 10 days after the judgment is rendered or other order complained of is entered, and may be amended within 20 days after it is filed. Article 2232 has been construed to be directory only. First Nat. Bank of Ft. Worth v. Henwood (Tex. Civ. App.) 183 S. W. 5; Head v. Altman (Tex. Civ. App.) 159 S. W. 135; Dumas v. Easley (Tex. Civ. App.) 219 S. W. 866; Texas Employer's Ins. Ass'n v. Moreno (Tex. Civ. App.) 260 S. W. 283; Dittman v. Model Baking Co. (Tex. Com. App.) 271 S. W. 75. We are therefore of the opinion, and so hold, that the provisions of subdivision 29, supra, as to the time in which original motion for new trial is required to be filed and may be amended, is directory and not mandatory, in that it is within the trial court's discretion to grant a motion filed after the expiration of the period of 10 days specified therein for the filing of motion for a new trial, or to grant an amended motion filed after the expiration of 20 days after the date original motion was filed.

In reference to the proceedings had before the court below, the dates of which are necessary to be determined in order to pass upon another view presented by said ground, equally determinative of same, the record discloses the following: That the trial began June 15, 1925; judgment was entered as of date the 17th day of June, 1925; the jury retired to consider and returned their verdict into court on June 19, 1925; on June 20, 1925, appellee's motion for judgment was filed. No reference to this motion was con-

tained ·in the judgment. The transcript does not contain any reference to the filing by appellant of motion for new trial other than a statement contained in its first amended original motion, to wit:

"Comes now the defendant herein filing this its first amended original motion for a new trial herein—"

which was filed and overruled August 1, 1925. The order overruling same shows that said motion was duly filed by leave of the court and duly heard and acted upon.

[10, 11] In this state of the record, it is impossible to ascertain the exact date on which the pronouncement was made by the court which constituted its judgment. The date of the judgment is the date on which the pronouncement was made by the court which determined the rights of the parties. Regardless of the date of any of the proceedings had prior to the rendition· of judgment, the· judgment can have no other date than that upon which it was in fact declared by the court. The clerical act of entering the judgment as pronounced by the court ᵗin the minutes during the term of the court at which rendered, as required by law, had nothing to do with fixing the date of the judgment. We are to assume from the condition of the record that an original motion for a new trial was filed within the period of time authorized by law, viz., within 10 days from the date the judgment was in fact pronounced, and that the amended motion was filed and acted upon within the time required. This, perforce, of the judgment entered on the amended motion, which is certain as to its date and without conflict in its provisions showing that same was duly filed by leave of the court, and was heard and acted upon, for, unless it should affirmatively appear that such recitals are incorrect, we must assume that all proceedings were in conformity with the requirements of the law as to the filing of the original and amended motions, and that said original motion was heard and determined within the time required by law. We feel constrained to call attention to and condemn the erroneous habit of some courts of entering a judgment "as of date," followed by numerals indicating some date often quite at variance with the record, as in this case showing that the date given could not be the date of the judgment, viz., the very day on which the court trying the case made the pronouncement that concluded the litigation.

In original opinion we did not discuss the action of the court in overruling appellant's objection to certain testimony on the ground that appellant had introduced testimony of similar character and thereby waived the effect of the objection made. By this omission we did not intend to hold, and did not hold, in passing upon other objections to evidence, that the court erred in his ruling in reference to the admission of evidence where such objection had been waived by appellant by the introduction of similar testimony. We only pointed out in our discussion the rule applicable to the introduction of testimony for the purpose of establishing market value by a witness, who did not see the property immediately after the fire causing the alleged damage and who testified in reference to such value as of the date on which he examined the property, evidence having been introduced showing the automobile was at that time in the same condition it was in immediately after the fire.

No reason being shown why we should not adhere to our former disposition of the case, appellee's motion for a rehearing is overruled.