**SUPERIOR PONTIAC COMPANY et al.,
Petitioners,**

v.

**The QUEEN INSURANCE COMPANY OF
AMERICA, Respondent.**

No. B–899.

Supreme Court of Texas.

Nov. 27, 1968.

Putman & Putman, Harold D. Putman and Richard G. Strong; Groce, Hebdon, Fahey & Smith and Charles R. Shaddox; and Houston & Thompson, San Antonio, for petitioners.

Tom H. King and Arch B. Haston, San Antonio, for respondent.

STEAKLEY, Justice.

Olga Dominguez, plaintiff below and a Petitioner here, the owner of a 1965 Pontiac Le Mans automobile, sued Respondent, The Queen Insurance Company of America, her theft and collision damage insurer, for damages in the sum of $3,200. The automobile in question was purchased by Olga from Superior Pontiac Company, of San Antonio, Texas, a cross-defendant below and a Petitioner here, in July, 1965, for $3,175.92 and had been driven 6,800 miles at the time of its damaging. On November 5, 1965, Olga delivered the automobile to Superior for repairs from whose premises it was stolen and later recovered at New Braunfels, Texas, in a damaged condition. Queen obtained Olga's authorization to pick up the automobile and it was returned to Superior. Queen obtained a repair appraisal in the sum of $924.20 from another firm. Repairs in this sum were made by Superior, but whether upon its own initiative or that of Queen is unclear. Olga did not authorize the repairs. After the repairs were made, Superior would not permit Olga to have the automobile checked by an outside mechanic, or permit her to test drive it unless accompanied by a representative of Superior, and refused to return the automobile to Olga unless she accepted it as repaired and signed a release. The repaired automobile was unacceptable to Olga after visual inspection and this suit resulted. The record does not indicate that there has been any change in the circumstances under which possession of the automobile has been withheld from Olga, and it seems clear that it has, at all times, been beyond her reach except and unless she agreed to accept the automobile in its repaired condition.

Queen named the Alamo National Bank of San Antonio a third-party defendant as a holder of a lien against the automobile and as a coinsured with Olga. In addition, Queen named Superior a third-party defendant whose negligence in various respects was alleged to have occasioned the

theft of the automobile, and against whom it asserted subrogation rights.

Queen admitted liability under the policy issued to Olga, the insurance clause of which required Queen:

"To pay for loss caused by collision to the owned automobile * * *";

"To pay for loss to the owned automobile * * * caused by theft or larceny."

"Loss" was defined in the policy as "direct and accidental loss of or damage to (a) the automobile, including its equipment, * * *."

Queen defensively pleaded the following additional provisions of the policy:

a. "The limit of the company's liability for loss shall not exceed the actual cash value of the property, or if the loss is of a part thereof the actual cash value of such part, at time of loss, nor what it would then cost to repair or replace the property or such part thereof with other of like kind and quality, * * *."

b. "The company may pay for the loss in money; or may repair or replace the damaged or stolen property; or may, at any time before the loss is paid or the property is so replaced, at its expense return any stolen property to the named insured, or at its option to the address shown in the declarations, with payment of any resulting damage thereto; or may take all or such part of the property at the agreed or appraised value but there shall be no abandonment to the company."

Upon the basis of these policy provisions, Queen alleged that it had elected to pay the loss in money for the necessary costs of repairing the automobile and tendered into court the sum of $924.20, which it alleged was the reasonable and necessary cost thereof.

Certain issues were submitted to a jury, and as pertinent to our decision the jury found: (1) that the reasonable cash market value of the automobile immediately prior to its theft was $2,875; (2) that its reasonable cash market value immediately after injury and before repairs was $750; (3) that the reasonable cash market value of the automobile immediately after the repairs by Superior was $1,900; and (11) that Olga did not authorize Superior to repair the automobile after its theft and its return to Superior. In answer to other issues, the jury exonerated Superior of any acts of negligence in connection with the theft of the automobile.

The trial court also made express findings in its judgment that Queen did not return the automobile to Olga, together with payment for the resulting damage to the automobile, and did not replace it with another automobile of like kind and quality; and, further, that there was no abandonment of the automobile by Olga to Queen. The trial court rendered judgment against Queen in favor of Olga and Alamo in the sum of $2,875 upon payment of which Queen would have all right and title to the automobile; and, further, that Queen take nothing in its third-party action against Superior.

The court of civil appeals reversed the judgment of the trial court and remanded the cause for another trial. It was the view of the court that the fact findings afforded no basis for the judgment against Queen in favor of Olga for the amount of $2,875; and that it was not possible under the pleadings, the evidence and the findings, to render a judgment of any kind in the case. Queen Ins. Co. v. Dominguez, 426 S.W.2d 286. Our views are otherwise.

Queen having admitted liability under the policy, the crucial issue for determination in the trial of the case was the nature and extent of its obligation to Olga. Queen's whole defense was predicated upon its tender of the repair sum of $924.20. Olga introduced evidence to establish

the reasonable cash market value of the automobile prior to its damaging and that the repairs in the tendered sum of $924.20 would not compensate her for the loss she had suffered, i. e., would not restore the automobile to substantially its former condition and value. The jury found the reasonable cash market value of the automobile prior to its damaging to have been $2,875; that its reasonable cash market value after the damaging was $750; and that its reasonable cash market value after the repairs was $1,900. There is evidence to support these findings from which it follows that the repair sum tendered by Queen would not compensate Olga for the loss she had suffered. Additionally, Queen did not return the automobile to Olga with payment for the damage it had suffered nor replace it with another automobile of like kind and quality. Queen made no objection to the issues submitted to the jury and did not request the submission of other issues. In view of all the circumstances here, cf., Stuyvesant Ins. Co. v. Driskill, 244 S.W.2d 291 (Tex.Civ.App.1951, no writ), and Standard Accident Ins. Co. of Detroit v. Richmond, 297 S.W. 879 (Tex. Civ.App.1927, writ dism.), and since, as before noted, possession of the automobile has been withheld from Olga, the liability of Queen is to be governed by the provision in the insurance contract that Queen's liability for loss shall not exceed the actual cash value of the automobile. The jury found this to be $2,875, and there is evidential support for the finding. The judgment of the trial court in favor of Olga was for this amount. The trial court also decreed that upon payment of this amount Queen would have all right, title and interest of Olga and Alamo in and to the automobile. In addition, the trial court rendered a take-nothing judgment in favor of Superior in view of the findings of the jury exonerating Superior of all acts of negligence charged by Queen in its suit against Superior asserting subrogation rights. Superior did not sue for the amount of its repairs or charges against the automobile, and the judgment did not purport to adjudicate any other matters of controversy between Queen and Superior. We disagree with Queen's contention that its trial amendment was sufficient to invoke an adjudication of the right of possession of the automobile as between them. We conclude, therefore, that the judgment of the trial court disposed of all the issues drawn by the parties in their respective suits.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

REAVLEY, J., not sitting.